[No. 14454.   In Bank. — April 2, 1892.]

ZACH MONTGOMERY, APPELLANT, v. PACIFIC COAST LAND BUREAU, RESPONDENT.

VENDOR AND PURCHASER — AUCTION SALE OF LAND — TERMS OF SALE — CONSTRUCTION OF PRINTED CATALOGUE — WARRANTY OF TITLE. — Where an auction sale of land was announced by means of a printed catalogue, in which a number of different tracts belonging to different owners were described, and the terms of credit, differing as to different parcels, were placed at the end of each description, a statement at the end of the catalogue, warranting the title perfect, allowing time for a search thereof, and requiring a deposit of ten per cent upon the fall of the hammer, applies generally to each separate tract of land described therein, and not merely to the one which immediately precedes it.

ID. — ACTION BY VENDOR — MONEY HAD AND RECEIVED — DEPOSIT WITH AUCTIONEER — AUTHORITY TO SELL — RATIFICATION — WRONGFUL RETURN OF DEPOSIT — LIABILITY OF AGENT. — Where no antecedent written authority from the owner of land to make an auction sale thereof is shown, and a corporation engaged in the business of selling lands upon commission, and assuming to act as the agent of the owner of land,

sold the land at auction, and received a deposit of ten per cent of the purchase-money, which was returned to the purchaser for a supposed defect in the title, the act of the owner of the land in tendering a conveyance to the intending purchaser in accordance with the contract made by the agent, and in notifying the agent, in writing, not to return to the purchaser the money deposited, before it was returned, is sufficient to show a ratification of the sale and to sustain an action by the owner of the land to recover the amount of the deposit from the agent, less proper charges and commissions, as money had and received to his use, upon a showing that the record title was perfect.

ID. — ASSUMPTION OF AUTHORITY BY AGENT —PRIMA FACIE EVIDENCE. — Where one sells land of another, claiming authority to do so, such assumption of authority is, as against himself, at least *prima facie* evidence of written authority.

ID. — VALIDITY OF PATENT — ADDITIONAL SOLDIER'S HOMESTEAD — ENTRY UNDER IRREVOCABLE POWER — TRANSFER AFTER ENTRY. — A patent of the United States to a tract of land as an additional soldier's homestead is valid, although the entry was made in the name of the soldier by his attorney in fact, acting under an irrevocable power dated two years before the entry, to which was added a relinquishment of dower by the wife, and after the entry and approval, but before the issuance of the patent, the land was conveyed in the soldier's name; and the title of one claiming under such patent is not only good in law, but it is also secure against a suit in equity to annul the patent.

ID.— ERRONEOUS ADVICE OF COUNSEL — GOOD FAITH — RISK OF PURCHASER. — A purchaser of land is not justified in refusing to accept a conveyance, and in demanding back a deposit paid by him on account of purchase-money, merely because of the opinion of learned counsel, given in good faith, that the title is not safe, if the opinion is erroneous, and the record title is in fact perfect. The purchaser must take the risk of the soundness of the advice upon which he acts.

ID. — AUCTION SALE — DEPOSIT OF PERCENTAGE OF CASH PAYMENT — EXAMINATION OF TITLE — LIABILITY OF AUCTIONEER — RETURN TO PURCHASER. — Although by the terms of an auction sale a deposit of a percentage of the cash payment with the auctioneer pending the examination of the title, which is warranted perfect, makes the auctioneer a stake-holder for the parties, and for his own protection, yet when the title is shown to be perfect, the deposit then becomes, according to the terms of the sale, a portion of the cash payment, and the property of the owner of the land, less the charges and commissions of the auctioneer, who cannot thereafter return it to the purchaser except at his own risk.

ID. — EVIDENCE — OPINIONS OF ATTORNEYS AS TO SAFETY OF TITLE — MEANING OF PRINTED TERMS OF SALE. — In an action by the owner of the land to recover from the auctioneer the amount of the deposit so returned, evidence of the opinions of the attorneys who pronounced the record title of the owner unsafe, and also evidence as to the meaning of the printed terms of sale, is inadmissible.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hunsaker, Britt & Goodrich,* and *Zach Montgomery,* in *pro. per.,* for Appellant.

*Wellborn, Stevens & Wellborn,* and *Wellborn, Parker & Stevens,* for Respondent.

BEATTY, C. J. — In April, 1886, the defendant, a California corporation, was engaged at the city of San Diego in the business of selling lands upon commission. On the 24th of that month, it sold at public auction to A. and S. Hart a tract of land belonging to the plaintiff for nine thousand dollars. The terms of sale were announced and advertised in advance by means of a printed catalogue, in which a number of different tracts belonging to different owners were described. At the end of each description were stated the terms upon which it would be sold, i. e., the portion of the price to be paid in cash, time of payment of balance, and rate of interest on deferred payments. The terms of sale of plaintiff's land so announced were as follows: "Terms, one half cash, balance in one to three years, and interest at ten per cent." After the description of other tracts to be sold on different terms as to credits, and at the end of the catalogue, was the following:—

"Title perfect. Instruments of sale at purchaser's expense. Ten days allowed for search of title. A deposit of ten per centum will be required on the fall of the hammer; balance of cash payment on delivery of deed, and if not so paid (unless for defect of title), then said ten per centum to be forfeited, and the sale to be void. For maps, catalogues, and further particulars, apply to Pacific Coast Land Bureau, branch office, Sixth Street, San Diego.    R. J. PENNELL, Auctioneer."

We remark, in passing, with respect to a question that seems to be raised in the agrument, that there is, in our opinion, no doubt that this last-quoted portion of the catalogue applies generally to each separate tract described therein, and not merely to that one which

immediately precedes it.   We hold, in other words, that
it states in part the terms of sale of plaintiff's tract of
land as well as of others described in the catalogue.

Such indeed seems to have been the construction acted
upon by all parties to the transaction, for immediately
ensuing the sale the Harts paid to defendant the sum of
nine hundred dollars, — ten per cent of the purchase
price, — and they at the same time placed in the hands
of their legal advisers an abstract of plaintiff's title
to the land for the purpose of obtaining their opinion
as to its validity.   Being advised that the title was de-
fective, they, or their attorneys, stated their objections
to representatives of the plaintiff, who insisted, not-
withstanding such objections, that his title was perfect,
and demanded the completion of the sale.   In this con-
nection he tendered a deed of conveyance to the pur-
chasers, to the sufficiency of which they made no
objection, but which they declined to accept, solely upon
the ground that the title of plaintiff was not perfect.
Upon the same ground they demanded of the defendant
the return of the nine hundred dollars deposited at
the time their bid was accepted.   In compliance with
this demand, the defendant, after being notified by
plaintiff not to do so, returned said nine hundred dol-
lars to the Harts, and the plaintiff thereupon commenced
this action to recover the same as money had and re-
ceived to his use.

The cause was tried without a jury, the findings and
judgment of the superior court were in favor of defend-
ant, and plaintiff's motion for a new trial was denied.
The appeal is from the judgment, and from the order
denying a new trial.

The complaint alleges in general terms the receipt by
defendant of nine hundred dollars to the use of plaintiff,
and the answer and finding of the court negative this al-
legation.   The findings therefore support the judgment.
But the appellant contends that the refusal of a new
trial was erroneous, because the superior court erred in
admitting evidence over his objections, and because the

evidence properly admissible does not sustain the findings.

There is included in the bill of exceptions an opinion of the superior judge, delivered prior to the filing of his findings of fact and conclusions of law, which shows very clearly that the principal ground of his decision was, that plaintiff's title, although it may be good, was not so free from doubt as to enable him to enforce its acceptance by the purchasers of the land. He also holds, apparently, that according to the evidence the nine hundred dollars in controversy was not received by defendant for plaintiff's use, but solely for the use and benefit of the defendant itself. In addition to these grounds upon which the decision of the superior court is rested in the opinion referred to, the respondent contends that the order denying a new trial must be affirmed for the reason, if for no other, that there was no evidence that plaintiff ever gave the defendant written authority to sell his lands, and consequently that it does not appear that defendant was the plaintiff's agent in the sale of said land, or that the ten per cent of the purchase price was received for his use or benefit.

It is true that the record contains no direct evidence of an antecedent written authorization to defendant to make the sale, and we concede that without such antecedent written authority, or a subsequent ratification by plaintiff of the sale made in his name before the return of the money to the purchasers, he could could not have claimed it of the defendant. But here there is evidence of such ratification. Before the money had been returned (June 21, 1886), the plaintiff had tendered a conveyance (May 28, 1886) to the purchasers, and had notified the defendant in writing not to return the money. Aside from this, we think that, as against one who assumes to be the agent of another, that fact is sufficient *prima facie* to justify the inference that he was duly authorized to do what he claimed the authority to do, and that where the question of agency in fact becomes material, the burden is upon him to rebut the

presumption arising from his claim of authority. In other words, we hold that where one sells land of another, claiming authority to do so, this, as against him, is at least *prima facie* evidence of written authority.

As to the grounds upon which the superior court expressly rested its decision, we think that neither is sufficient to sustain it. The evidence shows that the title of the plaintiff to the land in controversy was in fact perfect, and that this appeared from the abstract and public records of San Diego County at the time of the sale. The land, a tract of eighty acres, had been patented by the United States as an additional soldier's homestead. The entry was made in the name of the soldier, Cook, by his attorney in fact, acting under an irrevocable power dated two years before the entry, to which was added a relinquishment of dower by Cook's wife. After the entry and its approval, but before patent, the land was conveyed in the name of Cook to plaintiff's grantor. It was admitted that the legal title was in the plaintiff, but, in the opinion of the lawyers who advised the Harts, the terms of the power under which the land had been entered and conveyed, and the circumstances of the transaction, were such as clearly to evince, and to put any purchaser upon notice, that Cook had virtually and in effect made an assignment of his homestead right before the entry, contrary to the terms, or at least to the clear policy, of the law of the United States; that the patent had therefore been fraudulently obtained, and could at any time be annulled at the suit of the United States.

This opinion, we think, was erroneous. In the case of *Rose* v. *Nevada etc. Lumber Co.*, 73 Cal. 385, this court decided that a patent of the United States issued under similar circumstances was not void, and placed its decision upon the ground that there had been no violation of the terms or the spirit of the law. Upon the same ground, it must be held that plaintiff's title is not only good at law, but that it is secure against a suit in equity to annul the patent.

But the superior court, irrespective of the question of the actual validity of the title, which it held not to be necessarily involved, decided that the purchasers were justified in refusing the conveyance and in demanding back their deposit, and therefore that defendant was bound to restore it, because of the opinion of counsel of admitted standing, ability, and reputation that the title was not safe. We think, however, that upon the authority of *Winter* v. *Stock,* 29 Cal. 413, it must be held otherwise.

A purchaser of real property does well to obtain professional advice as to the validity of the title, but he must take the risk of the soundness of the advice upon which he acts. It may turn out to be erroneous, and if so, the fact that it was given and acted upon in good faith will not exempt him from damages for the breach of his contract. None of the later cases cited by respondent are in conflict with this view. We have not been cited to any decision, and we know of none, which holds that where the facts are all admitted and appear of record, an erroneous opinion that a title is invalid will justify a purchaser in receding from his bargain.

From this view of the law, it follows, as a necessary consequence, that when the plaintiff's title was shown to be perfect, and he tendered a sufficient conveyance, he became entitled to demand and receive from the purchasers the cash payment provided for in the terms of sale, and as a part thereof, the nine hundred dollars in the hands of defendant, less its proper charges and commissions.

It may be conceded that as to this deposit the defendant, pending the examination of the title, was a stakeholder for the parties and for its own protection. But when the title was shown to be perfect, the deposit then became, according to the terms of sale, a portion of the cash payment, and the property of the plaintiff, less the charges and commissions of the defendant. Thereafter the defendant could not return it to the purchaser except at its own risk. Having done so, and having

made a mistake, it cannot escape its just liability to the plaintiff.

We think the court erred in admitting in evidence the opinions of the attorneys who pronounced plaintiff's title unsafe, and in admitting evidence as to the meaning of the printed terms of the sale. We also think that on the evidence the findings and judgment should have been for the plaintiff.

The judgment and order appealed from are reversed.

DE HAVEN, J., SHARPSTEIN, J., PATERSON, J., McFARLAND, J., GAROUTTE, J., and HARRISON, J., concurred.